*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-068

JUNE TERM, 2014

| | | |
|---|---|---|
| In re J.S.A., Juvenile | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Rutland Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 43-4-12 Rdjv |

Trial Judge: Cortland Corsones

In the above-entitled cause, the Clerk will enter:

Father appeals from a judgment of the superior court, family division terminating his parental rights to the minor J.S.A.  Father contends the trial court erred by failing to ensure that his withdrawal from the termination of parental rights (TPR) hearing was made knowingly and voluntarily and with a full understanding of the rights he was waiving.  We affirm.

The underlying facts are not at issue and need only be briefly summarized.  J.S.A. was born in April 2007, and was six years old at the time of the hearing in this matter.  The parents were not married.  In August 2008, the child was living alone with mother when he was taken into DCF custody due to mother's abuse and neglect.  Custody was returned to mother subject to protective conditions, and father—who had not been involved with the family on a regular basis—later attended a few supervised visits.  The child was taken into DCF custody again in April 2012, based on reports that mother had left the child, who was living with his former foster family and respite providers.  DCF's efforts to locate father were unsuccessful until several months later, in January 2013, when it was discovered that he was incarcerated in Massachusetts; father had not informed DCF of his whereabouts, and had not met any of his earlier case plan goals.

The child was adjudicated CHINS in May 2012, with a goal of achieving reunification with mother by October 2012.  He was placed with the same foster family that had been taking care of him, where he has since remained.  A petition to terminate parental rights was filed in February 2013, and a hearing was held in January 2014.  Shortly before the hearing, mother voluntarily relinquished her parental rights.  Father remained incarcerated at the time of hearing, with a release date, at the earliest, of November 2014.

The record shows that the court and parties had arranged for father's participation in the TPR hearing by telephone.  Father was on the line at the start of the hearing when his attorney informed the court that father had decided he did not want to participate by telephone because he could not adequately convey his feelings over the phone.  The court observed that it was father's choice, but explained to father that "if you choose not to participate by phone, you may well lose the case, and you might be giving up significant rights to your child that you're never—will be able to get back."  Father indicated that he understood.  The court then told father that he could choose not to participate, but cautioned that it "would strongly encourage you to stay on the phone and to participate in the hearing."  Father thanked the court "for the opportunity" but essentially declined, stating that he could later "fight

and appeal it." Father nevertheless remained on the line during the State's first witness, and then, according to his lawyer, "ended up hanging up on his own volition" during a break. The court subsequently issued a written decision granting the petition, noting that father had "voluntarily ended his participation" in the hearing. This appeal followed.

Assuming that there is a basic due-process parental right to participate in a TPR proceeding, father does not claim the right was violated or that his withdrawal was coerced or involuntary. He contends, rather, that the trial court erred by failing to inquire more fully to ensure that father's withdrawal was made "with full understanding of the rights he was waiving," including the right to testify. We note, however, that father—while represented by counsel at the hearing—made no objection on this basis. Accordingly, the claim was waived and is reviewable, if at all, only for plain error that "strike[s] at the very heart of [father's] constitutional rights." In re G.S., 153 Vt. 651, 651 (1990) (mem.) (quotation omitted).

Father cites no authority to suggest that the court's actions here constituted error, much less plain error. Indeed, we have specifically rejected a similar claim, in the criminal context, in State v. Bradley, 164 Vt. 346 (1995), where the defendant on several occasions voluntarily absented himself from the trial proceedings, acknowledging through counsel that he understood the court's expressed concern that the absences could be "harmful to his defense." Id. at 348. On appeal, defendant claimed, as here, that the trial court "erred by failing to inquire sufficiently into whether he knowingly and voluntarily waived his right to be present at trial." Id. We held that the court's inquiry was adequate, noting that the U.S. Supreme Court in Taylor v. United States, 414 U.S. 17, 20 (1973) had specifically rejected the argument that a waiver in these circumstances was ineffective without an express warning "that the trial would continue in his absence thereby foreclosing his right to testify and confront witnesses against him." Id. at 349. As we observed, "[a]lthough not required by Taylor, the court here at least warned defense counsel that the trial would continue in defendant's absence and that his absence was harmful to his defense." Id. We thus found that the trial court "did not commit error, let alone plain error." Id. at 350.

The same conclusion follows here, where the trial court expressly ascertained that defendant did not wish to participate in the hearing; assured him of his right to participate throughout the proceedings; informed him that, by choosing not to participate, he "may well lose the case . . . and . . . might be giving up significant rights to your child" that he could not "get back;" and even "strongly encourage[d] [father] to stay on the phone and to participate in the hearing." This was adequate under the facts and law, and we thus find no error, much less plain error, warranting reversal.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

2